**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ISAIAH BLANCHARD ET AL., | * | |
| Plaintiffs, | * | |
| v. | * | Civil No. 25-1932-BAH |
| DORCHESTER STREET JET SKIS, INC., ET AL., | * | |
| Defendants. | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiffs Isaiah Blanchard and Breanna Brandt (collectively "Plaintiffs") bring this lawsuit against Dorchester Street Jet Skis, Inc.,[1] Madhi Sbih, and Nayif Ramadan (collectively "Defendants"), asserting multiple claims arising from a jet ski collision. ECF 33 (amended complaint). Pending before the Court is Defendants' partial motion to dismiss. ECF 35. Plaintiffs filed a response in opposition to the motion, ECF 36, to which Defendants replied, ECF 39.[2] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons stated below, the partial motion to dismiss is GRANTED.

[1] Plaintiffs allege that "Dorchester Street Jet Skis, Inc. is operated under the name 'Dorchester Jet Skis' and the trade name 'OC Downtown Adventures.'" ECF 33, at 3 ¶ 9 (amended complaint).

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

# I. BACKGROUND

## A. Factual Background[3]

Plaintiffs allege that they were seriously injured on September 13, 2023, while participating in a guided jet ski tour offered by Defendant Dorchester Street Jet Skis, Inc., a company owned and operated by Defendants Mahdi Sbih ("Sbih"), and Nayif Ramadan ("Ramadan"). ECF 33, at 1 ¶ 1, at 3 ¶ 13, at 13 ¶ 85. They allege that they sustained their injuries when a jet ski operated by Alyssa Brandt ("Brandt"), who was also part of the guided tour, collided with their own jet ski. *See id.* at 18–19 ¶¶ 146–50.

Plaintiffs allege that Defendants failed to comply with Maryland's boating safety regulations, which require "anyone born after July 1, 1972," to "have a boating safety certificate to operate a jet ski, personal watercraft, or any other motorized water vessel." *Id.* at 4 ¶ 23. However, "personal watercraft livery operators" are permitted to "issue temporary boater safety certificates to customers without permanent boating safety certificates, conditioned on . . . a number of requirements," including the administration of a written test of the relevant safety regulations, which customers must pass with a score of 90% or higher to obtain their temporary safety certificate. *Id.* at 5 ¶¶ 25–32.

On the day of Plaintiffs' tour, "a receptionist and[ ] Ramadan . . . appeared to be the only people working at Dorchester Street Jet Skis' office." *Id.* at 13 ¶ 86. Plaintiffs allege that prior to the tour, Defendants administered a multiple-choice boater safety certification test to several customers, including Brandt. *Id.* at 14 ¶¶ 95–96. Plaintiffs aver that "Ramadan and/or the receptionist wrote the answers to the boater safety test on a whiteboard or other display for Plaintiffs' group to see and use on the test, and/or they allowed the answers to stay on the board

[3] These facts come from the complaint and the Court therefore assumes them to be true for the purposes of a motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

from prior classes and groups." *Id.* Plaintiffs contend that Brandt relied on the answers from the whiteboard to select the correct answers on her test. *Id.* According to Plaintiffs, "Ramadan and the receptionist saw and were aware that [ ] Brandt had cheated, with their help," particularly since, in their view, Brandt "was done much more quickly than anyone could reasonably finish the test on their own." *Id.* ¶¶ 97–98.

Once the group had finished their boater safety exams, Plaintiffs got on a jet ski together, while Brandt rode separately on her own jet ski. *Id.* ¶ 101. Plaintiffs contend that Ramadan began by giving basic instructions to the group, and that, "[f]rom the beginning, [ ] Brandt was talking and not paying attention." *Id.* at 14 ¶ 100, at 15 ¶ 104. Despite Ramadan's repeated attempts to quiet her, Plaintiffs allege that Brandt continued to talk over him. *Id.* ¶¶ 105–06, 108–10. Yet Ramadan did not pull Brandt from the group. *Id.* ¶ 112. According to Plaintiffs, Ramadan made the decision to allow Brandt to operate the jet ski, "despite the fact that [she] had not read or understood any of the information from the educational or hands-on orientation phases," and "despite the fact [that she] could not operate and/or control the jet ski." *Id.* ¶¶ 113–14.

Once out on the open water, Plaintiffs contend that "Brandt was operating the jet ski erratically," "zoom[ing] past them, slow[ing] down almost to a complete stop, and then alternat[ing] between the two." *Id.* at 16 ¶ 118. According to Plaintiffs, Ramadan "looked back and saw and/or had ample opportunity to look back and see all of this," but he did not pull Brandt from the group. *Id.* ¶¶ 119, 122. Instead, Ramadan allowed the group to operate their jet skis while he "sat on his jet ski, drifted with the water and wind, and read his phone." *Id.* at 16–17 ¶¶ 123–24. Plaintiffs aver that Brandt then drove her jet ski directly into the side of the Plaintiffs' jet ski, and because "Ramadan was not in the immediate area . . . it took him a period of time to notice that something had happened." *Id.* at 18 ¶ 147, at 19 ¶ 151. Plaintiffs contend they sustained serious injuries as a result of the collision. *Id.* at 19 ¶ 156.

Plaintiffs bring ten counts against Defendants, alleging, among other claims, negligence, negligent entrustment, gross negligence, and vicarious liability. *See id.* at 20–52 ¶¶ 160–271. As relevant here, Counts IX and X are for Defendants' alleged civil conspiracy with Brandt, who is not a party to the action.[4] *See id.* at 52–54 ¶¶ 272–80. Specifically, Plaintiffs allege that "Defendants and [ ] Brandt entered into an agreement or understanding on the day of the [collision] that she would cheat on the temporary boater safety exam with Defendants' help." *Id.* at 52 ¶ 273.

### B. Procedural History

Plaintiffs filed their original complaint on June 17, 2025. ECF 1. On August 28, 2025, Defendants filed a partial motion to dismiss, ECF 12, and an answer to the complaint, ECF 13. Plaintiffs then filed an amended complaint, ECF 25, which they subsequently withdrew, ECF 26. On October 28, 2025, Plaintiffs filed a motion for leave to file an amended complaint, ECF 28, which the Court granted, ECF 32, rendering Defendants' initial motion to dismiss moot. Defendants then filed an answer to the amended complaint, ECF 34, and a partial motion to dismiss, seeking dismissal of Counts IX and X of Plaintiffs' amended complaint for failure to state a claim of civil conspiracy, ECF 35. Plaintiffs oppose the motion to dismiss, ECF 36, and Defendants filed a reply in support of their motion, ECF 39.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Ashcroft v.*

[4] Under Maryland law, "[p]laintiffs are permitted 'to recover against any one or more of the conspirators without naming them all as defendants.'" *Baltimore Flips Israel 2020 LLC v. Yosef*, 769 F. Supp. 3d 370, 403 (D. Md. 2025) (quoting *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs, Inc.*, 596 A.2d 687, 698 (Md. App 1991)).

*Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

## III. ANALYSIS

Defendants contend that Plaintiffs have failed to state a claim for civil conspiracy and that Counts IX and X of the amended complaint should therefore be dismissed. ECF 35, at 2. They argue that Plaintiffs have not established that an agreement existed between Brandt and Defendants, and that Plaintiffs have not adequately alleged the existence of an unlawful or tortious act underlying the conspiracy. ECF 35-1, at 4–8 (memorandum in support of motion to dismiss). Plaintiffs argue to the contrary. ECF 36, at 7–13. The Court agrees with Defendants that Counts IX and X should be dismissed.

"A federal district court considering state common law claims applies the substantive law of the forum state." *Menk v. MITRE Corp.*, 713 F. Supp. 3d 113, 183 (D. Md. 2024) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). To state a claim for civil conspiracy under Maryland law, a plaintiff must allege facts showing "1) A confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the

conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) [a]ctual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (internal quotations omitted) (quoting *Van Royen v. Lacey,* 277 A.2d 13, 14–15 (Md. 1971)). Maryland law does not provide a "separate tort for civil conspiracy; instead, a civil conspiracy theory merely serves to extend liability to the co-conspirators after some other tortious conduct is established." *Arkansas Nursing Home Acquisition, LLC v. CFG Community Bank*, 460 F. Supp. 3d 621, 647–48 (D. Md. 2020).

Plaintiffs plead Counts IX and X as civil conspiracy without reference to any underlying tort, *see* ECF 33, at 52–55 ¶¶ 272–80, despite the fact that "civil conspiracy is not a stand-alone tort." *Hernandez v. Lloyd*, Civ. No. JRR-23-1016, 2024 WL 1329297, at *18 (D. Md. Mar. 28, 2024). "Civil conspiracy is not an independent cause of action under Maryland law, and 'a defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort.'" *Lilly v. Balt. Police Dep't*, Civ. No. RDB-22-2752, 2023 WL 6216605, at *15 (D. Md. Sept. 25, 2023) (first citing *Hejirika v. Md. Div. of Corr.*, 264 F. Supp. 2d 341, 346–47 (D. Md. 2003), then quoting *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp. 2d 678, 692 (D. Md. 2001)). This pleading deficiency alone is enough to warrant dismissal, as "courts routinely dismiss a plaintiff's civil conspiracy claim as an independent cause of action." *Hernandez*, 2024 WL 1329297, at *18 n.16; *see also Arkansas Nursing Home Acquisition*, 460 F. Supp. 3d at 648 ("It is 'improper' to plead civil conspiracy in a separate count of a complaint as if it were a 'cause[ ] of action independent of an underlying tort.'" (quoting *Manikhi v. Mass Transit Admin.*, 758 A.2d 95, 110 n.6 (Md. 2000)).

However, even examining Plaintiffs' civil conspiracy claims in the context of their broader complaint does not save them. Plaintiffs do not appear to argue that their counts alleging civil conspiracy relate to any of their other causes of action—nor could they, since their other claims all relate to negligence, and "it is impossible to conspire to commit a

negligent act." *Suntrust Mortg., Inc. v. Busby*, 651 F. Supp. 2d 472, 488 (W.D.N.C. 2009) (emphasis omitted); *see also Lombel v. Flagstar Bank F.S.B.*, Civ. No. PWG-13-704, 2013 WL 5604543, at *7 n.7 (D. Md. Oct. 11, 2013) ("Because civil conspiracy requires a deliberate—*i.e.* intentional—agreement to accomplish a particular end, whereas negligence requires unintentional conduct, one cannot conspire to be negligent." (first citing *Hoffman v. Stamper*, 867 A.2d 276, 291 (Md. 2005), then citing Restatement of Torts (Second) § 282 cmt. d); *Edokobi v. Toyota Motor Credit Corp.*, Civ. No. PWG-19-248, 2020 WL 4017832, at *9 (D. Md. Mar. 2, 2020) ("'Conspiracy to negligence' is not a cause of action in Maryland.").

Rather, Plaintiffs seem to contend that Defendants' alleged violation of Maryland boater safety regulations is the unlawful conduct underpinning their civil conspiracy claim. ECF 36, at 10–11 (citing Md. Code Regs. ("COMAR") 08.04.08.02(D)). The parties disagree about whether the Defendants' alleged conduct constitutes a violation of the relevant regulations. *Compare* ECF 35-1, at 5–6, *with* ECF 36 at 10–13. However, the Court need not decide whether the conduct as alleged is a regulatory violation, because even assuming a violation occurred, "[e]very violation of a statute"—or, as here, a regulation—"is not a tort." *See Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1579 (Fed. Cir. 1996) (Nies, J., concurring).

To give rise to civil conspiracy liability, a defendant's underlying unlawful conduct must provide a private right of action. *See Alleco Inc. v. Harry & Jeannette Weinberg Found., Inc.*, 665 A.2d 1038, 1045 (Md. 1995) ("No action in tort lies for conspiracy to do something unless the acts actually done, if done by one person, would constitute a tort." (quoting *Domchick v. Greenbelt Services*, 87 A.2d 831, 834 (Md. 1952)); *see also Columbia Real Est. Ins. Co. v. Caruso*, 384 A.2d 468, 472 (Md. App. 1978) (noting that the unlawful act underlying a civil conspiracy claim "must be of such a character as to create an actionable wrong before the right of recovery against the defendant exists" (quoting *Goldman v. Building Ass'n*, 133 A.

843, 846 (Md. 1926)); *Rojas v. Huntington Neighborhood Ass'n*, Civ. No. DLB-21-28, 2022 WL 616815, at *5 (D. Md. Mar. 1, 2022) (finding that the violation of a criminal statute that "does not give rise to a private cause of action in tort" "cannot be the predicate tortious conduct for a civil conspiracy claim"); Tort, Black's Law Dictionary (12th ed. 2024) (defining "tort" as "[a] civil wrong, other than breach of contract, for which a remedy may be obtained, usu[ally] in the form of damages"). Yet the regulation upon which Plaintiffs appear to rest their conspiracy claim upon does not provide a private cause of action. *See* COMAR 08.04.08.04(B) ("A person who violates any provision of this regulation is subject to the penalties and fines of Natural Resources Article, § 8-2001, Annotated Code of Maryland."); *see also* Md. Code Ann., Nat. Res. § 8-2001 (providing for criminal sanctions but no private right of action).

Moreover, Plaintiffs have not identified any cases in which any court—in Maryland or elsewhere—considered a regulatory violation to be a tort.[5] Because federal courts presiding over state common law claims are "bound to apply the applicable state law as it exists and cannot create or expand the common law," the Court here declines to extend the scope of Maryland civil conspiracy liability to a proposed tort apparently not recognized in Maryland law. *Anderson v. Piedmont Aviation, Inc.*, 68 F. Supp. 2d 682, 688 n.3 (M.D.N.C. 1999); *see*

---

[5] Plaintiffs contend that "[a] number of courts have found that entering into an agreement or understanding to violate a public safety statute amounts to a civil conspiracy," yet cite only an Illinois state case and a North Carolina federal case in support of that proposition—neither of which applies Maryland law. ECF 36, at 10 (first citing *Scott v. Aldi, Inc.*, 703 N.E.2d 526, 530 (Ill. App. 1998), then citing *Seymour v. Arjana Rosic Anthony Crawford Gray*, No. 1:16-cv-00235-MOC-DLH, 2016 WL 4411507, at *4 (W.D.N.C. 2016)). While those cases cannot define the scope of Maryland common law, nor do they support Plaintiffs' contention, because neither court found a regulatory violation to be the unlawful conduct underlying a civil conspiracy claim. *See Scott*, 703 N.E.2d at 529–30 (relying on the public safety statute insofar as its violation "is evidence of negligence," determining that "the alleged conspiracy is one to operate vehicles negligently," and further noting that "[a] cause of action for civil conspiracy exists only if one of the parties to the agreement commits . . . a tort"); *see also Seymour*, 2016 WL 4411507, at *4 (describing an alleged "conspiracy to violate federal safety regulations" but not addressing the viability of that claim in the course of adjudicating a motion to dismiss for lack of personal jurisdiction).

*also Leo v. Kerr-McGee Chem. Corp.*, 37 F.3d 96, 101 (3d Cir. 1994) ("Federalism concerns require that we permit state courts to decide whether and to what extent they will expand state common law. . . . Our role is to apply the current law of the jurisdiction, and leave it undisturbed." (quoting *City of Philadelphia v. Lead Indus. Ass'n*, 994 F.2d 112, 123 (3d Cir. 1993) (internal quotations omitted)). Counts IX and X must therefore be dismissed.[6] Because the Court previously granted Plaintiffs leave to amend their complaint, *see* ECF 32, Counts IX and X will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is **GRANTED**. A separate implementing Order will issue.

Dated: October 5, 2026

/s/
Brendan A. Hurson
United States District Judge

[6] Because the Court grants the partial motion to dismiss on this basis, it need not reach Defendants' alternative argument that Plaintiffs failed to establish the existence of an agreement or understanding. *See* ECF 35-1, at 4.